## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

KATIRIA RAMOS,
individually and on behalf of all
others similarly situated,                                    **CLASS ACTION**

      Plaintiff,                                        **JURY TRIAL DEMANDED**

v.

HOPELE OF FORT LAUDERDALE, LLC
d/b/a PANDORA @ GALLERIA,
a Florida limited liability company, and
PANDORA JEWELRY, LLC, a Maryland
limited liability company,

      Defendants.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, Katiria Ramos, brings this class action against Defendants, Hopele of Fort Lauderdale, LLC d/b/a Pandora @ Galleria ("Pandora Galleria"), and Pandora Jewelry, LLC ("Pandora LLC"), both collectively ("Pandora"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), arising from Pandora's knowing and willful violations of the TCPA.

2.      Pandora Galleria owns and operates the Pandora franchise location jewelry retail store located at The Galleria at Fort Lauderdale.

3.      Pandora LLC is the franchisor for Pandora Galleria, and facilitates Pandora Galleria's marketing efforts, including Pandora Galleria's text messaging campaign at issue here.

Notably, Pandora LLC directed, encouraged, and authorized Pandora Galleria to market Pandora through CallFire Inc., the company responsible for transmitting the violative text messages to Plaintiff and members of the class.

4.      To boost its profits, Pandora Galleria, with assistance and direction from Pandora LLC, regularly engages in unsolicited telemarketing, with no regard for consumers' privacy rights.

5.      This case arises from the transmission of telemarketing text messages to Plaintiff's cellular telephone promoting goods sold by Pandora.

6.      Through this action, Plaintiff seeks injunctive relief to halt Pandora's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily lives of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of herself and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member, as defined below, belonging to a different state than Pandora.  Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

8.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Pandora is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Pandora provides and markets its goods within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Pandora's tortious conduct against Plaintiff occurred within this district and, on information

and belief, Pandora has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, subjecting Pandora to jurisdiction here.

## PARTIES

9.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

10.     Defendant, Pandora Galleria, is a Florida limited liability company with its principal place of business located at 2458 E. Sunrise Blvd., Fort Lauderdale, FL 33304.  Pandora Galleria directs, markets, and provides its business activities throughout the State of Florida.

11.     Defendant, Pandora LLC, is a foreign limited liability company registered to do business in Florida, with its principal place of business located at 250 West Pratt Street, 18th Floor, Baltimore, MD 21201. Pandora LLC directs, markets, and provides its business activities nationwide, including throughout the State of Florida.

## THE TCPA

12.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

13.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

14.     The TCPA exists to prevent communications like the ones described within this Complaint.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

15.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded

voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

16.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

17.     In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

18.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

21.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

23.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

25.    Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text

message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

26.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## BACKROUND FACTS

27.     On October 19, 2017 at 10:03 a.m., Pandora, using an automated text-messaging platform, caused two text messages to be transmitted to Plaintiff's cellular telephone number ending in 2365 ("2365 Number"):



28.     The text messages constitute telemarketing because they both independently encouraged the purchase of goods.

29.     The short-code (313-131) from which the text messages originated is registered to a

Callfire, Inc. owned and/or affiliated company doing business as Ez Texting. Ez Texting provides text marketing services for retailers, including, on information and belief, for Pandora.

30.     The links contained in the second text message is a link to Pandora Galleria's website, where it promotes Pandora's goods.

31.     Plaintiff received the subject text messages within this judicial district and, therefore, Pandora's violation of the TCPA occurred within this district. Upon information and belief, Pandora caused other text messages to be sent to individuals residing within this judicial district.

32.     At no point in time did Plaintiff provide Pandora with her express written consent to be contacted by text using an ATDS.

33.     Plaintiff is the subscriber and sole user of the 2365 Number, and is financially responsible for phone service to the 2365 Number.

34.     The impersonal and generic nature of the text messages, as well as the use of a short-code, demonstrates that Pandora utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016)("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725 at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS).

35.     Specifically, upon information and belief, Pandora utilized a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized by Pandora have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

36.     Pandora's two unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Pandora's text messages also inconvenienced Plaintiff and caused disruption to her daily life.  *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").  Plaintiff received the subject text messages while she was at work, causing her to stop her work activities to check her phone.

## CLASS ALLEGATIONS

### PROPOSED CLASS

37.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

38.     Plaintiff brings this case on behalf of the below defined Class ("Class"):

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, without emergency purpose and without the recipient's prior express consent.**

39.     Pandora and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several

thousands, if not more.

### NUMEROSITY

40.    Upon information and belief, Pandora has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

41.    The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class members is a matter capable of ministerial determination from Pandora's call records.

### COMMON QUESTIONS OF LAW AND FACT

42.    There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

> (1) Whether Pandora made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;
>
> (2) Whether Pandora can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> (3) Whether Pandora's conduct was knowing and willful;
>
> (4) Whether Pandora is liable for damages, and the amount of such damages; and
>
> (5) Whether Pandora should be enjoined from such conduct in the future.

43.    The common questions in this case are capable of having common answers. If Plaintiff's claim that Pandora routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of

being efficiently adjudicated and administered in this case.

### TYPICALITY

44.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

45.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Pandora's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

47.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Pandora.  For example, one court might enjoin Pandora from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**

**(As to Pandora Galleria and Pandora LLC)**

48.     Plaintiff re-alleges and incorporates paragraphs 1-47 above, as if fully set forth herein.

49.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

50.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

51.     Pandora – or third parties directed by Pandora – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

52.     These calls were made without regard to whether Pandora had first obtained express permission from the called party to make such calls. In fact, Pandora did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

53.     Pandora has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

11

54.     As a result of Pandora's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

**COUNT II**
**<u>Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)</u>**
**(As to Pandora Galleria and Pandora LLC)**

55.      Plaintiff re-alleges and incorporates paragraph 1-47 above.

56.     At all times relevant, Pandora knew or should have known that its conduct as alleged herein violated the TCPA.

57.     Pandora knew that it did not have prior express consent to send these text messages.

58.     Because Pandora knew or should have known that Plaintiff and Class members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

59.     As a result of Pandora's violations, Plaintiff and the Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff, Katiria Ramos, on behalf of herself and the other members of the Class, prays for the following relief:

a.     A declaration that Pandora's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.     A declaration that Pandora's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c.   An injunction prohibiting Pandora from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.   An award of actual, statutory damages, and/or trebled statutory damages; and

e.   Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff and the Class hereby demand a trial by jury.

Date: October 26, 2017

Respectfully submitted,

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
*/s/ Scott Edelsberg*
Scott A. Edelsberg, Esq.
Florida Bar No. 100537
edelsberg@kolawyers.com
Jeff Ostrow, Esq.
Florida Bar No. 121452
ostrow@kolawyers.com
Avi R. Kaufman, Esq.
Florida Bar No. 84382
kaufman@kolawyers.com
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
*Counsel for Plaintiff and the Class*

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: 305-479-2299

**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954-400-4713