UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CV-62100-MORENO/SELTZER

KATIRIA RAMOS, individually and
on behalf of all others similarly situated,

      Plaintiff,

vs.

HOPELE OF FORT LAUDERDALE,
LLC d/b/a PANDORA @ GALLERIA,
a Florida limited liability company, and
PANDORA JEWELRY, LLC, a Maryland
limited liability company,

      Defendants.

_____/

**DEFENDANT HOPELE OF FORT LAUDERDALE,
LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF
<u>KATIRIA RAMOS' MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Hopele of Fort Lauderdale LLC ("Hopele") files this Response in Opposition to Plaintiff Katiria Ramos' ("Plaintiff") Motion for Summary Judgment ("Motion," ECF No. 68).[1] Plaintiff wholly fails to meet her burden as a movant for summary judgment and fails to support her legal theories with facts, much less undisputed material facts. The Motion should be denied.[2]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff claims that Hopele violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.* (the "TCPA") on October 19, 2017, by sending a single text message (the "Text Message")[3] to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") without her prior express consent. Plaintiff seeks the entry of summary judgment on her two separate causes of action, with Count II differing only in that it seeks treble statutory damages for an alleged willful or knowing violation of the TCPA.

Plaintiff's Motion should be denied (and, in fact, Hopele's Motion for Summary Judgment granted) because the TCPA's call restrictions were never triggered. For TCPA liability to attach, the Text Message must have been sent using an ATDS, which the statute defines as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The D.C.

---

[1]     Pursuant to Local Rule 56.1(a), concurrently herewith, Hopele files its Counter-Statement of material facts ("Counter Facts") in response to the Statement of Undisputed Material Facts filed by Plaintiff (ECF No. 69) ("Plaintiff's Facts").

[2]     For the reasons set forth in Hopele's Motion for Summary Judgment (ECF No. 62) and the Statement of Undisputed Material Facts in support thereof (ECF No. 63), this Court should enter summary judgment in favor of Hopele on all counts in Plaintiff's Complaint (ECF No. 1).

[3]     The Court should ignore and disregard Plaintiff's references to any text messages allegedly sent by Hopele via the EZ-Texting website other than the October 19, 2017 message referenced in Plaintiff's Complaint. ECF No. 1, ¶ 27; Counter-Facts, ¶¶ 94-96. As recently noted by Magistrate Judge Seltzer, other 'text messages [that] are not alleged in the Complaint … are not relevant to the claims or defenses in the case," *see* ECF No. 55, at 7, and thus, Plaintiff is barred from introducing these additional, irrelevant messages as evidence in this case.

Circuit in *ACA Int'l v. F.C.C.*, No. 15-1211, 2018 WL 1352922 (D.C. Cir. Mar. 16, 2018) ("*ACA*") recently invalidated the FCC's broad interpretation of what constitutes an ATDS in prior orders that expanded liability beyond the plain terms of the statute. The plain terms of the statute require that an ATDS must have the capacity to generate phone numbers randomly or sequentially, and to dial them. *Id*. at *4-9. The web-based software application at issue here is not an ATDS because it is undisputed that (1) based on the statutory definition, the platform lacked any capacity to send text messages to randomly or sequentially generated phone numbers; and (2) the platform could not send text messages without human intervention. These are two independent grounds that preclude TCPA liability here, and upon which the court may rely to deny the Motion.

Indeed, it does not appear that the parties disagree on the material facts, but only on portions of the governing law. It is undisputed that Hopele used a web-based software application called EZ-Texting (owned and operated by CallFire, Inc.) that only allows users to send text messages to specific, identified phone numbers manually input into the system by the user (as was done here when Hopele input Plaintiff's cell phone number). As CallFire attests, EZ-Texting has no ability to generate random or sequential phone numbers or to send text messages to such numbers. The EZ-Texting platform is therefore not an ATDS under the governing statutory definition.

Further, Plaintiff admits that human intervention is required in order to send <u>any</u> messages at all through the EZ-Texting platform. The FCC has stated that the basic function of an ATDS is "the capacity to dial numbers without human intervention." *ACA*, at *3; *Pozo v. Stellar Recovery Collection Agency, Inc.*, No. 15-cv-929, 2016 WL 7851415, at *3 (M.D. Fla. Sept. 2, 2016). Nor does Plaintiff dispute this rule of law. *See* Motion, pp. 12, 18. Hopele's managing member indisputably was required to manually perform thirty-one separate steps to send any texts through the EZ-Texting system. Testimony from Hopele and CallFire confirms that, without performing

those steps, it is impossible for the EZ-Texting system to send any texts at all (*i.e.*, automatically, without human intervention). Plaintiff attempts to gloss over this significant human intervention to instead focus on the final act of transmission on the back end. Plaintiff takes the position that, as a matter of law, the significant initial human intervention was not sufficient to defeat liability under the TCPA. But, applicable law directly contradicts that legal position.

Numerous courts, including those within the Eleventh Circuit, have analyzed **this exact fact pattern** and found that no TCPA violations occurred. For example, in *Luna v. Shac*, 122 F. Supp. 3d 936 (N.D. Cal. 2015) and *Jenkins v. mGage, LLC*, No. 14-cv-2791-WSD, 2016 WL 4263937 (N.D. Ga. Aug. 12, 2016), two courts confronted with indistinguishable facts held that the level of human intervention required to send the texts precluded a finding that the texts were sent using an ATDS, thereby precluding TCPA liability. *See Luna*, 122 F. Supp. 3d at 941 (granting summary judgment for a TCPA defendant who sent texts using the same EZ-Texting platform used here because "human intervention was involved in several stages of the process prior to Plaintiff's receipt of the text message"); *Jenkins*, 2016 WL 4263937, at *7 (granting summary judgment for a TCPA defendant where texts were sent via a platform operating nearly identically to EZ-Texting because "the uncontested evidence show[ed] human intervention was required to send each text message"). Tellingly, Plaintiff fails to address, distinguish, or mention those opinions, which require the denial of Plaintiff's Motion (and the granting of Hopele's) as a matter of law.

The recent guidance provided in the long-awaited *ACA* opinion further underscores the preclusion of TCPA liability in a case like this, where no ATDS was used and human intervention indisputably was required. In *ACA*, the Court struck down portions of the FCC's 2015 Declaratory Ruling and Order, 30 FCC Rcd. 7961 ¶ 17 (July 10, 2015) ("2015 FCC Order"), which had significantly expanded what type equipment may constitute an ATDS. Plaintiff improperly relies

3

heavily upon the now-overturned expansive interpretations in the 2015 FCC Order. Again, it is telling that, rather than address the *ACA* decision head on (because *ACA* completely eviscerates Plaintiff's argument that Hopele used an ATDS), Plaintiff instead seeks to avoid *ACA* altogether by averring that *ACA* is not binding and that this Court can continue to rely upon the stricken portions of the 2015 FCC Order. As set forth below, that is simply incorrect.

Finally, Plaintiff provides no argument or purported facts to support liability on Count II (knowing or willful violation). Because Plaintiff has wholly failed to proffer any evidence to support a finding of willfulness, the Motion should be denied as to Count II (and Hopele's parallel request for summary judgment granted), as there are no facts for the jury to consider.

## SUMMARY OF THE UNDISPUTED AND INDISPUTABLE MATERIAL FACTS

Hopele is the franchisee of a Pandora Jewelry store in Ft. Lauderdale, and co-defendant Pandora is the franchisor. ECF No. 1, ¶ 3. In 2014, Plaintiff made a purchase at the store and voluntarily provided her cell phone number to Hopele. Counter-Facts, ¶ 79. At that time, Plaintiff's number was input manually by a Hopele employee into KWI, the point-of-sale system that Hopele uses to conduct transactions and store customer information. *Id.*, ¶¶ 80-81. KWI is not, and is not connected to, any telephone system, and cannot make or send calls or messages. *Id.*, ¶ 82.

Hopele utilized a third-party website called www.eztexting.com, which is owned and operated by CallFire, Inc., to send the Text Message to Plaintiff.[4] *Id.*, ¶¶ 83-84, 89. That platform

---

[4] Plaintiff incorrectly seeks to double the number of text messages that were purportedly sent by claiming that each (single) message created by Hopele constitutes two separate text messages. Counter-Facts, ¶¶ 38-39. In reality, Hopele drafted the Text Message as a single message – not two – as they appear on Plaintiff's Bates No. 58, Ex. 4 thereto. *Id.* iPhone software – like Plaintiff's here – splits up hyperlinks that appear at the end of a text message into their own text "bubble," irrespective of whether the message is sent as a single message. *See* Apple Software Developer's Guide, Technical Note TN2444 (describing best practices for link previews in text messages), at https://developer.apple.com/library/content/technotes/tn2444/_index.html, last accessed April 5, 2018. Also, judicial notice of the iPhone software's performance is proper under Rule 201, FRE.

lacks the capacity to send messages to random or sequential phone numbers, or to send messages to sequential blocks of phone numbers. *Id.*, ¶ 86. In order to send any texts via www.eztexting.com, David Pentecost, the managing member of Hopele, went through a lengthy process (over 30 steps) to, *inter alia*, manually: (i) curate a highly-tailored (by purchase date, geography, type of phone number, etc.) list of customers to reach, (ii) create the content of the message, (iii) select the intended recipients, (iv) choose whether to send the message(s) in real-time or to preschedule transmission at some future time, and (v) finalize the process by clicking on a "send" button to direct the www.eztexting.com software to transmit the message(s). *Id.*, ¶¶ 52-58, 89. Without this human action, no text messages would have, or could have, been sent at all. *Id.*, ¶¶ 60, 88-93.

Notably, Plaintiff admits that: (i) Hopele drafted the text message content. Plaintiff's Facts, ¶ 40; (ii) customer information was input and stored into the KWI system, a system separate and apart from any calling or telephone system. *Id.*, ¶ 51; (iii) Hopele performed multiple steps in order to send *any* texts, including signing into KWI and curating a list of customers, culling down the list to desired customers, removing irrelevant information, logging onto www.searchbug.com to remove landline numbers, uploading the resulting list to the EZ-Texting website, creating the message content, and scheduling a date and time for transmission. *Id.*, ¶¶ 52-58; Motion, pp. 7-8.

## ARGUMENT

### I.    The EZ-Texting Platform Is Not An ATDS As A Matter Of Law

The Motion should be denied for the simple reason that the EZ-Texting website, which was indisputably used by Hopele to send the Text Message, is not an ATDS as a matter of law.

#### A.    Based On The Statutory Definition And The Undisputed Facts, EZ-Texting Is Not An ATDS

The TCPA provides that it is "unlawful for any person . . . (A) to make any call . . . using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular

telephone service." 47 U.S.C. § 227(b)(1). "The term 'automatic telephone dialing system' means equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1); *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1308 (S.D. Fla. 2016) (Scola, J).

The D.C. Circuit in *ACA* invalidated as "arbitrary" and "capricious" the FCC's expanded construction of ATDS in prior orders, thereby leaving intact the plain terms of the statutory definition under 47 U.S.C. § 227(a)(1), as set forth above. *See ACA*, *generally* (rejecting the FCC's 2003, 2008 and 2015 purported expansions of the statutory definition). Plaintiff acknowledges this in her Motion. *See* Motion, p. 12 (citing cases for the proposition that "the starting point for interpreting a statute is the language of the statute itself") (citations omitted). *ACA* held that the FCC could not construe "capacity" to include an equipment's ability to acquire ATDS functionalities through modifications, including software changes. *Id.* at *4-9. The Court further rejected the argument that the FCC could expand the statutory definition of an ATDS to include "dial[ing] from an externally supplied set of numbers" "even if it has no capacity itself to generate random or sequential numbers," which contradicted other FCC pronouncements that an ATDS must *itself* be capable of generating random or sequential numbers. *Id.* at *11-12. By setting aside the 2015 FCC Order's broad interpretation of the term ATDS, *ACA* effectively reinstated the significantly more narrow statutory definition of ATDS. *See* 47 U.S.C. § 227(a)(1).

Here, the EZ-Texting platform is not an ATDS because CallFire's testimony that EZ-Texting lacks the capacity to generate phone numbers randomly or sequentially is undisputed (and indisputable).[5] Counter-Facts, ¶ 86. The system also does not have the capacity to send messages

---

[5]   Plaintiff's expert, Randall Snyder, purports to offer a conclusory legal opinion to the contrary, but his opinions are not admissible. Hopele has concurrently filed a *Daubert* Motion [ECF No. 83] directed at Mr. Snyder's impermissible, unreliable, and incorrect legal conclusions.

to random or sequential phone numbers, or to send messages to sequential blocks of phone numbers. *Id.*, ¶ 87. Based on the plain terms of the statute, Plaintiff's Motion should be denied (and summary judgment granted in favor of Hopele). *See Marks v. Crunch San Diego*, 55 F. Supp. 3d 1288, 1292, 1294 (S.D. Cal. 2014) (granting defense summary judgment based on the statutory definition of ATDS, because the platform lacked the "capacity to store or produce numbers to be called, using a random or sequential number generator, and to dial those numbers, and "[n]umbers only enter the system through … methods [that] require human curation and intervention").

**B.      *ACA* Is Binding On This Court, Which Renders Plaintiff's "Capacity" Argument Fatally Flawed, And Requires The Denial Of Plaintiff's Motion (And, In Fact, Warrants Summary Judgment In Favor Of Hopele)**

**1.      *ACA* Is Binding Authority Nationwide**

Plaintiff repeatedly argues that *ACA* is not binding on this Court. Motion, pp. 13, 20-22. Plaintiff is incorrect. In *ACA*, the United States Judicial Panel on Multidistrict Litigation consolidated various petitions from different circuit courts of appeal (filed pursuant to 28 U.S.C. §§ 2343-44) challenging the 2015 FCC Order. *See* Consolidation Order (**Exhibit A**). The Panel then assigned the consolidated challenge to the D.C. Circuit, providing it with the **exclusive authority** to review the 2015 FCC Order. *Id.*; *US West Comm., Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000) ("Pursuant to 28 U.S.C. § 2112(a), the [MDL] panel consolidated these petitions and assigned them to the Eighth Circuit … now the sole forum for addressing challenges to the validity of the FCC's [Order]" (quotations omitted)); *GTE S., Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999) (a circuit that hears a consolidated challenge to an agency rule is the "sole forum for addressing challenges to the validity of the [rule]"); 28 U.S.C. § 2342(1) (vesting "exclusive jurisdiction" in "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit)" to "enjoin, set aside, suspend (in whole or in part), or to determine the

validity of . . . all final orders of the [FCC]"); 28 U.S.C. § 2112 (requiring the MDL panel to

consolidate into one circuit such appeals of FCC orders that are lodged in multiple circuits).

"[C]onsequently, [the] decision striking down the [rule] became 'binding outside of the [D.C.

Circuit]." *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F. 3d 460, 467

(6th Cir. 2017) (quoting *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008)).

> As a Court <u>in this Circuit</u> recognized:

> Generally speaking, "[b]inding precedent for all is set only by the Supreme Court,
> and for the district courts within a circuit, only by the court of appeals for that
> district." *Murphy v. F.D.I.C.*, 208 F.3d 959, 965 (11th Cir. 2000) (quoting *In re
> Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987),
> *aff'd sub nom.*, *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989)). Where,
> however, multiple petitions challenging an FCC (or other agency) regulation are
> consolidated in one circuit under 28 U.S.C. § 2112—as here—there is support for
> the proposition that the assignee circuit "bec[o]me[s], and remains, the sole forum
> for addressing . . . the validity of the FCC's rules." *Peck*[, 535 F.3d at 1057]; *see
> also GTE S., Inc.*[, 199 F.3d at 743] (Fourth Circuit lacked jurisdiction to review
> FCC's pricing rules because petitions challenging those rules had been consolidated
> under Section 2122(a) and assigned to Eighth Circuit). Thereafter, a "decision
> regarding the validity of the [challenged interpretations] is binding outside of th[at]
> . . .Circuit." *Peck*, 535 F.3d at 1057; *see also ONRC Action v. U.S. Bureau of
> Reclamation*, No. CIV. 97-3090-CL, 2012 WL 3526833, at *30 (D. Ore. Jan. 17,
> 2012) ("[O]pinions issued by other Circuit Courts of Appeal deciding consolidated
> petitions for review of agency regulations are binding outside that circuit." (citing
> *id.*)) (subsequent history omitted).

> This case law stands for the proposition that, if the D.C. Circuit Court were to vacate
> . . . one or more of the challenged FCC interpretations, this Court could not instead
> continue to follow the FCC's now-vacated (or not follow the FCC's now affirmed)
> interpretations in resolving Plaintiff's claims.

*Sliwa v. Bright House Networks, LLC.*, No. 2:16-cv-235, 2016 WL 3901378, at *3 (M.D. Fla.

July 19, 2016) (footnote omitted); *Marshall v. CBE Group, Inc.*, No. 16-cv-02406, 2018 WL

1567852, at *5, n.4 (D. Nev. March 30, 2018) (rejecting Plaintiff's argument that *ACA* is not

binding and granting defense summary judgment in TCPA case).

> In sum, because *ACA* "vacate[d]… one or more of the challenged FCC interpretations, this

Court c[an]not instead continue to follow the FCC's now-vacated … interpretations in resolving

Plaintiff's claims." *Sliwa*, 2016 WL 3901378, at *3; *see also Peck*, 535 F.3d at 1057. This Court must recognize the finality of *ACA* and apply it here.

## 2.   Because *ACA* Is Binding, Plaintiff's "Capacity" Argument Fails

Because *ACA* is binding, the Court should disregard Plaintiff's "capacity" argument entirely. Indeed, all cases cited by Plaintiff that relied *exclusively* on a prior FCC Order governing the "capacity" of an ATDS is now bad law. This includes all of Plaintiff's cited authority stating that equipment calling numbers from a preprogrammed list constitutes an ATDS, because *ACA* specifically overturned the FCC's interpretation in this regard. Motion, p. 18; *see also Marshall*, 2018 WL 1567852, at *7 (stating that because *ACA* "explicitly rejected" the 2015 FCC Order's expansive interpretation of "capacity," the plaintiff (and plaintiff's expert – Mr. Snyder) – could "not rely on the 2015 FCC Order's definition of an ATDS to the extent it includes systems that cannot be programmed to dial random or sequential numbers").

Plaintiff asks this Court to adopt the *exact* flawed interpretation of "capacity" as stated in the 2015 FCC Order, which *ACA* expressly overturned as "arbitrary" and "capricious," and which the FCC Chairman and Commissioners have since publicly rejected while praising the *ACA* opinion.[6] Specifically, Plaintiff's (and the 2015 FCC Order's) theory of "capacity" is that

---

[6] "Today's unanimous D.C. Circuit decision addresses yet another example of the prior FCC's disregard for the law and regulatory overreach." *See* FCC Chairman Pai on D.C. Circuit Decision Curbing Regulatory Overreach, March 16, 2018, https://www.fcc.gov/document/chairman-pai-dc-circuit-decision-curbing-regulatory-overreach, last accessed March 20, 2018 (**Exhibit B**).

"I am heartened by the court's unanimous decision, which seems to reaffirm the wording of the statute and rule of law. This will not lead to more illegal robocalls but instead remove unnecessary and inappropriate liability concerns for legitimate companies trying to reach their customers who want to be called." *See* FCC Commissioner O'Rielly Statement on D.C. Circuit TCPA Decision, March 16, 2018, https://www.fcc.gov/document/comm-orielly-statement-dc-circuit-tcpa-decision, last accessed March 20, 2018 (**Exhibit C**).

"The 2015 FCC decision opted to subject consumers and legitimate businesses to liability. Thankfully, the D.C. Circuit, in a unanimous decision, has now corrected that error." *See* FCC

equipment constitutes an ATDS where (i) the equipment is able to store or produce numbers to be called using a random or sequential number generator, *but is not used that way*, or (ii) the equipment is incapable in its present form of being used that way, but might be capable after modification. Motion, pp. 12-17. This is precisely – almost verbatim – the interpretation of "capacity" that *ACA* rejected. *See ACA*, at *4 and *13 (criticizing the 2015 FCC Order because it "endorsed a broad understanding under which the statute prohibits any calls made from a device with the capacity to function as an autodialer, regardless of whether autodialer features are used to make a call," stating that "equipment must, in fact, be used as an autodialer to make the calls before a TCPA violation can be found," and finding that the 2015 FCC Order "cannot be sustained, at least given the [FCC's] unchallenged assumption that a call made with a device having the capacity to function as an autodialer can violate the statute even if autodialer features are not used").

The D.C. Circuit's well-reasoned "capacity" analysis is best exemplified by its analogy to modern day cell phones. As *ACA* makes clear, nearly every smart phone has the theoretical "capacity" to be an autodialer if used in a certain way or modified in conjunction with added software. That would mean that, every text sent by a cell phone user to a friend without prior written consent may be a TCPA violation because the cell phone has the theoretical capacity to be an ATDS. *ACA*, at *5-6 ("[E]ssentially any smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer and thus function as an ATDS … If a device's "capacity" includes functions that could be added through app downloads and software additions, and if smartphone apps can introduce ATDS functionality into the device, it follows that all smartphones, under the Commission's approach, meet the statutory definition of an autodialer").

---

Commissioner Carr Statement on D.C. Circuit Decision, March 16, 2018, https://www.fcc.gov/document/commissioner-carr-statement-dc-circuit-decision, last accessed March 20, 2018 (**Exhibit D**).

44839720;2

Although that is *precisely* what the *ACA* Court sought to prevent, that is inexplicably *exactly* what Plaintiff asks this Court to find – that theoretical, but unused "capacity," violates the TCPA. As *ACA* recognizes, that is an untenable position:

> The Commission's understanding would appear to subject ordinary calls from any conventional smartphone to the Act's coverage, an unreasonably expansive interpretation of the statute …. If every smartphone qualifies as an ATDS, the statute's restrictions on autodialer calls assume an eye-popping sweep. … The reach of the statute becomes especially pronounced upon recognizing that, under the Commission's approach, an uninvited call or message from a smartphone violates the statute even if autodialer features were not used to make the call or send the message … Those sorts of anomalous outcomes are bottomed in an unreasonable, and impermissible, interpretation of the statute's reach. The TCPA cannot reasonably be read to render every smartphone an ATDS subject to the Act's restrictions, such that every smartphone user violates federal law whenever she makes a call or sends a text message without advance consent.

*Id.* at *1, 6-7. Accordingly, the Court should reject Plaintiff's "theoretical capacity" argument as contrary to *ACA*, and find that the EZ-Texting website is not an ATDS under the governing statutory definition, precluding TCPA liability. *See Marshall*, 2018 WL 1567852, at *4.

### C.  Plaintiff's Reliance On The Conclusory and Unreliable Legal Opinions Of Its Proffered Expert, Randall Snyder, To Support A Finding That Hopele Used An ATDS, Is Improper

Plaintiff relies heavily on its expert, Randall Snyder, to argue that the EZ-Texting system qualifies as an ATDS. Motion, pp. 23-24. As fully explained in Hopele's *Daubert* Motion (*see* fn. 5, *infra*), Mr. Snyder's opinions constitute inadmissible legal opinions and must be excluded for that reason alone. In addition, Mr. Snyder's opinions are unreliable because he does not even purport to rely on factual evidence sufficient to support his sweeping conclusions. He does not claim any prior intimate familiarity with the EZ-Texting platform's specific functionality, methodology, code or processes, he does not claim to have examined any evidence that could result in such knowledge, and, in fact, no such evidence exists in this case. In fact, this Court (including in a case assigned to Magistrate Judge Seltzer) previously struck Mr. Snyder's similar proffered

11

ATDS opinions in TCPA cases for these exact reasons.[7] Moreover, even if this Court were inclined to consider Mr. Snyder's legal conclusions, Mr. Snyder is simply wrong on the law and the facts.

**First**, Mr. Snyder's opinion that the EZ-Texting website "has the capacity to generate random or sequential numbers" (Motion, p. 23; Snyder Decl. [ECF No. 83-1], ¶¶ 13, 85-88) is flatly contradicted by the sworn testimony of CallFire's Chief Operating Officer, but Mr. Snyder did not review that critical testimony. Counter-Facts, ¶¶ 86-87, 90 (EZ-Texting "does not have the ability to send messages to anyone who is not on the list of numbers input and/or uploaded by the customer" and cannot, "without customer action, generate telephone numbers, or send messages to those numbers"); Snyder Decl. ¶ 11 (listing the sources on which he relied, but listing only CallFire's eight-paragraph declaration solicited by Plaintiff, which is attached to the Declaration as Ex. B). **Second**, Mr. Snyder concedes that autodialing functionality and random and sequential number generation *do not currently exist* on the EZ-Texting website. Snyder Report, ¶ 86 (the EZ-Texting website would "require only a few dozen lines of software code at most, including error protection, and writing these generated numbers into a file or queue to be dialed automatically").

---

[7]     *See Legg v. Voice Media Group, Inc.*, 13-cv-62044-COHN/SELTZER, 2014 WL 1767097, at *6 (S.D. Fla. May 2, 2014) (granting motion to exclude Mr. Snyder's proposed opinion that the defendant used an ATDS); *Strauss v. CBE Group, Inc.*, 15-cv-62026-COHN/SELTZER, 2016 WL 2641965, at *2 (S.D. Fla. March 22, 2016) (granting motion to exclude TCPA expert's opinion that defendant used an ATDS); *Mohamed v. Am. Motor Co., LLC*, 15-cv-23352, 2017 WL 4310757, at *3-4 (S.D. Fla. Sept. 28, 2017) (Cooke, J.) (granting motion to exclude TCPA expert's proposed opinion as unreliable). *ACA* further highlights the impropriety of Mr. Snyder providing a legal opinion on the definition of an ATDS by showing that it has been a matter of much legal debate over the last several years, and construction of that term falls squarely within the province of the Courts. *See Legg*, 2014 WL 1767097, at *6; *Strauss*, 2016 WL 2641965, at *2. Importantly, even if Mr. Snyder is permitted to testify regarding the use of an ATDS, that does not change the end result – that TCPA liability is precluded because significant human intervention was required to send the Text Message using the EZ-Texting website. *See also Marshall*, 2018 WL 1567852, at *8 (relying on *Legg* to conclude that Mr. Snyder's opinions were improper legal conclusions regarding the definitions of an ATDS, and concluding that Mr. Snyder's opinions were unreliable because of his failure to analyze the precise calling system used in that case).

Thus, Mr. Snyder admits EZ-Texting cannot *currently* function as an ATDS. This admission, combined with *ACA* and other relevant authority, requires a finding that EZ-Texting is not an ATDS, precluding TCPA liability. *See Marshall*, 2018 WL 1567852, at \*6-7 (granting defense summary judgment and stating, "the parties do not appear to dispute that the [platform], by itself, does not qualify as an ATDS . . . the dispute is whether the [system], in conjunction with [another] system, constitutes an ATDS," and *ACA* "explicitly rejected this 'expansive' interpretation").

## II.      Plaintiff's Motion Should Be Denied Because The Text Message Was Sent By, Through, And As A Result Of, Significant Human Intervention

Even if the Court somehow finds that the EZ-Texting website has the capacity to function as an autodialer (which it should not), it is nevertheless undisputed that (i) the website was not used in that manner by Hopele, and (ii) significant human intervention was required for Hopele to send the Text Message via the EZ-Texting website. Counter-Facts, ¶¶ 45, 52-58, 88-93. Plaintiff cannot (and does not) refute the fact that the EZ-Texting website lacks the ability to serve its purpose of sending text messages without a user first performing multiple steps, all requiring human intervention. Plaintiff's Facts, ¶¶ 52-58; Counter-Facts, ¶¶ 45, 52-58, 88-93.

### A.      *ACA* Did Not Alter the Human Intervention Analysis For Purposes of TCPA Liability

While *ACA* marks a sea change in TCPA cases in that it significantly re-narrows the types of devices that may qualify as an ATDS, it did not alter the human intervention component of the TCPA liability analysis. *See ACA*, at \*3, 12 (affirming that the "basic function of an autodialer is the ability to dial numbers without human intervention") (citations omitted); *Marshall*, 2018 WL 1567852, at \*7, n. 4 (holding that even assuming the 2015 FCC Order remains binding – and it does not – the human intervention element would still apply). Even Plaintiff acknowledges that the basic function of an ATDS is the capacity to dial numbers "without human intervention."

Motion, pp. 12, 18 (admitting that human intervention analysis remains). *ACA* underscores that no TCPA liability can attach if calls (or texts) were not sent *actually using* automated, autodialer functions – even if the equipment has the theoretical "capacity" to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *ACA*, at *4, 12-13. Here, the level of human intervention required by Hopele to send the Text Message (and *any* text messages, to anyone, for that matter) precludes TCPA liability entirely.

### B. Courts Frequently Grant Summary Judgment Against TCPA Claims When It is Undisputed That Human Intervention Was Required

Courts in the Eleventh Circuit frequently grant summary judgment on TCPA claims when it is undisputed that human intervention was involved in the process used to send the text messages. *See*, *e.g.*, *Ferrer v. Bayview Loan Servicing*, No. 15-cv-20877, 2018 WL 582584, at *6 (S.D. Fla. Jan. 26, 2018) (Scola, J.) (holding that where the platform required a user to manually dial calls by selecting recipients, and the platform could not "place calls without human input, and [w]as not able to dial predictively, store, or produce telephone numbers independently," defendant was entitled to summary judgment on a TCPA claim); *Pozo*, 2016 WL 7851415, at *3 (granting summary judgment on TCPA claim and stating that "dialing systems which require an agent to manually initiate calls do not qualify as autodialers under the TCPA"); *Martin*, 192 F. Supp. 3d at 1308-09 (granting defense summary judgment where testimony indicated that all calls were manually dialed); *Wilcox v. Green Tree Servicing, LLC*, No. 14-cv-1681, 2015 WL 2092671, at *4 (M.D. Fla. May 5, 2015) ("[I]f the [person] selects the number to be called, then the call would be made as a result of human intervention, and the call would not be made using an ATDS"); *Estrella v. Ltd Fin. Servs., LP*, No. 14-cv-2624, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015) (plaintiff's TCPA claims fail as a matter of law where "the calls were placed manually with the use of human intervention"); *Gaza v. LTD Fin. Servs., L.P.*, No. 14-cv-1012, 2015 WL 5009741,

at *4 (M.D. Fla. Aug. 24, 2015) ("The record shows that the subject calls were placed manually [as] the agent selected the number to be called and the calls were made as a result of human intervention.").[8] Two indistinguishable cases are worthy of extensive discussion.

### 1.   *Luna v. Shac*, 122 F. Supp. 3d 936 (N.D. Cal. 2015)

The material facts in *Luna* are identical to those here, and they preclude TCPA liability entirely. In *Luna*, the defendant also used CallFire's web-based www.EZTexting.com platform to send promotional text messages to its customers using multiple steps. *Luna*, 122 F. Supp. 3d at 937; Counter-Facts, ¶¶ 45, 52-58, 88-93.[9] First, the EZ-Texting user would input telephone numbers into the web-based platform by uploading, cutting and pasting, or manually typing

---

[8]      Courts throughout the country grant summary judgment in favor of TCPA defendants when significant human intervention is required to send text messages. *See, e.g., Marshall*, 2018 WL 1567851, at *8 (granting defense summary judgment on TCPA claim based on the level of human intervention, despite that plaintiff's expert (Mr. Snyder) proffered the ultimate legal conclusion (which the court disregarded as improper and unreliable) that the system at issue qualified as an ATDS); *Schlusselberg v. Receivables Performance Mgmt, LLC*, No. 15-7572 (FLW), 2017 WL 2812884, at *1, *3 (D. N.J. June 29, 2017) (granting summary judgment where human intervention was required to make calls and therefore, fell "outside of the TCPA because it does not constitute as an ATDS under 47 U.S.C. § 227 (a)(1)"); *Goad v. Censeo Health, LLC,* No. 3:15CV00197 JLH, 2016 WL 2944658, at *2-3 (E.D. Ark. May 19, 2016) (granting summary judgment based on "evidence that [the] telephone system require[d] human intervention to function" and noting that "[u]ncontroverted testimony that a system is very clearly not an automatic telephone dialing system warrants summary judgment"); *Glauser v. GroupMe, Inc.*, 11-cv-2584, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (holding that text messages sent as "a direct response to the intervention" of defendant precluded TCPA liability because dialing "numbers without human intervention is required before any liability under the TCPA can apply"); *McKenna v. WhisperText*, No. 14-cv-00424, 2015 WL 428728, at *4 (N.D. Cal. Jan. 30, 2015) (dismissing TCPA claims where human intervention was involved prior to text messages being sent, thereby "disqualifying the equipment at issue as any kind of ATDS" because uploading customer phone numbers to a database requires "human curation and intervention"); *Marks v. Crunch San Diego*, 55 F. Supp. 3d 1288, 1289 (S.D. Cal. 2014) (defendant not liable where – just like Hopele – it manually uploaded customers' phone numbers into a web-based platform, drafted the message to be sent, and selected the specific time/date to send); *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193-94 (W.D. Wash. 2014) (granting defense summary judgment where calling system required defendant to press "accept" to initiate each call, even where the plaintiff's expert (Mr. Snyder – the same expert as here) proffered an "expert" opinion to the contrary);

[9]      For each material fact, Hopele cites to *Luna* and the corresponding undisputed fact here.

numbers from an existing list into the website. *Luna,* 122 F. Supp. 3d at 937; Counter-Facts, ¶¶ 52-58(a)-(n), 89. Customers could also add themselves to the platform by opting in. *Luna,* at 937; Counter-Facts, ¶¶ 46, 51. Next, the user would login to EZ-Texting to draft the message content. *Luna,* at 937; Counter-Facts, ¶¶ 52-58(n)-(q), 89. The employee would then select specific phone numbers to receive the message, and then click "send" on the website to transmit the message. *Luna,* at 937; Counter-Facts, ¶¶ 52-58(s)-(w), 60, 89. The user had to select an option to transmit the messages in real time or preschedule transmission "[a]t some future date." *Luna,* at 937; Counter-Facts, ¶¶ 52-58(u)-(v), 89(d). The text message was sent to the plaintiff using this process. *Luna,* at 937; Counter-Facts, ¶¶ 52-58(a)-(w), 89. The Court granted a defense summary judgment based on these undisputed facts because "human intervention was involved in several stages of the process prior to Plaintiff's receipt of the text message." *Luna,* at 941.

    *Luna* cannot be distinguished. **Each defendant used CallFire's "EZ-Texting" platform**. In each case, the same CallFire/EZ-Texting representative (Mr. Thinakaran) offered testimony about the process that cannot be disputed. *Luna,* 122 F. Supp. 3d at 937-41; Counter-Facts, ¶ E. That testimony unambiguously provides that there is nothing automatic about the EZ-Texting system and that all steps in the process leading up to a text message being sent require human intervention. *Id.*, ¶¶ 45, 52-58, 60, 85-93. *Luna,* 122 F. Supp. 3d at 937-41. The *Luna* Court ultimately granted summary judgment in favor of the defendant based on these undisputed facts because "human intervention was involved in several stages of the process prior to Plaintiff's receipt of the text message." *Luna,* 122 F. Supp. 3d at 941. Because the material facts are indistinguishable, the human intervention analysis in *Luna* applies equally here. This Court should reach the same conclusion and deny Plaintiff's Motion (and grant Hopele's pending motion).

2.      *Jenkins v. mGage, LLC*, 2016 WL 4263937 (N.D. Ga. Aug. 12, 2016)

In *Jenkins*, the defendant (Opera) used a web-based platform called mGage ("Platform") to send messages to recipients. *Jenkins*, 2016 WL 4263937, at *1.[10] To send messages, an mGage user, such as Opera, must navigate to mGage's website and log into mGage's Platform. *Jenkins*, at *1; Counter-Facts, ¶¶ 52-58(a), 89(a). The user was required to upload phone numbers, which were not provided by the Platform. *Jenkins*, at *2; Counter-Facts, ¶¶ 52-58(a)-(n), 83, 85-93. Opera uploaded a list of numbers to the Platform and also manually added telephone numbers to the Platform when individuals added their number to a list on Opera's website, or on a guest list form. *Jenkins*, at *2; Counter-Facts, ¶¶ 52-58(m)-(t), 89(c). The user then was required to create and type the text message content into the Platform, and select which telephone numbers should receive the message. *Jenkins*, at *1-2; Counter-Facts, ¶¶ 52-58(m)-(t), 89(b). The user chooses when to send the messages. *Jenkins*, at *1; Counter-Facts, ¶¶ 52-58(u)-(v), 89(d). The user could click the "send" button to send the message immediately, or could use a drop-down calendar function to schedule a later date and time to send the message. *Jenkins*, at *1; Counter-Facts, ¶¶ 52-58(w), 89(d)-(e).

The *Jenkins* Court, relying on binding Eleventh Circuit precedent and Florida District Court cases, adopted *Luna* outright and held that, under the circumstances presented (identical to those at issue here and in *Luna* in all material respects), human intervention was required to send the text messages to the plaintiff, such that summary judgment should be entered in favor of the defendant on the plaintiff's TCPA claims. 2016 WL 4263937, at *7. The Court found the reasoning from *Luna* "sound and consistent with the reasoning of other courts' findings that human intervention discredits that a communication system is an ATDS" and granted summary judgment

---

[10]      For each material fact, Hopele cites to *Jenkins* and the corresponding undisputed fact here.

because "the uncontested evidence show[ed] human intervention was required to send each text message." *Id.* These facts are indistinguishable, and the same result is required here. [11]

### C.    It is Undisputed That Human Intervention Was Required to Send the Text Message to Plaintiff

The undisputed facts establish that every step of Hopele's messaging process – from individual, in-store contact with customers to gather each contact number, sorting through those numbers to curate a targeted list by geographic area, culling down that list to only cell phone numbers using Searchbug, logging onto the EZ-Texting website, manually inputting numbers and selecting which numbers should receive which messages, drafting the message content and determining when to send each message, pressing "send" to prompt EZ-Texting to follow Hopele's transmission instructions – required and was performed by a human and with no automation. Plaintiff's Facts, ¶¶ 52-58; Motion, pp. 7-8; Counter-Facts, ¶¶ 52-58, 83, 85-93. CallFire confirmed that these steps were taken by Hopele here, *id.* ¶ 89, and *must* be taken by any user in order for any text messages to be sent using EZ-Texting. *Id.*, ¶¶ 83, 85-93.

Nevertheless, Plaintiff concludes, *without citation or support*, that "the EZ-Texting platform . . . dialed … numbers automatically." Motion, p. 23. That is incorrect. If phone numbers are not uploaded to the website by a customer, and the customer does not create message content, select recipients, and press the "send" button to give the final authorization to send out specific text messages, no text message(s) can or will be sent. Counter-Facts, ¶¶ 52-58, 83, 85-93. Without Hopele having performed all of the steps it did (which Plaintiff does not dispute), no text messages would have, or could have, been sent *at all* via the web-based EZ-Texting platform. *Id.*

---

[11]    Notably, both *Luna* and *Jenkins* were decided under the 2015 FCC Order's broad definition of ATDS (now set aside by *ACA*), yet those courts *still* found that the level of human intervention prevented TCPA liability. Thus, even under Plaintiff's broad "capacity" argument relying on the 2015 FCC Order, *Luna* and *Jenkins* still necessitate the denial of Plaintiff's Motion.

Plaintiff attempts to downplay the significance of the human intervention required and present here, focusing instead on what Plaintiff's expert (Mr. Snyder) speculates happened automatically after Hopele gave the "send" command. But, Plaintiff's conclusory assertions that Hopele "did not press a button to call each telephone number," and "had no involvement whatsoever with respect to actual dialing and calling of the telephone numbers" (Plaintiff's Facts, ¶ 60; Motion, p. 8) are red herrings to distract the Court from the significant level of human intervention here, which precludes TCPA liability. Counter-Facts, ¶¶ 60, 52-58, 83, 85-93; *see Marshall*, 2018 WL 1567852, at *7-8 (holding that even in the face of Mr. Snyder's proffered opinions regarding the use of an ATDS, summary judgment was warranted based on the level of human intervention required).

By ignoring the manual human action required ultimately send *any* text messages, Mr. Snyder is choosing to arbitrarily start his definition of ATDS after all of the human intervention has taken place. Since Plaintiff and Mr. Snyder do not dispute that the human intervention occurred at the outset and is required to send text messages (Plaintiff's Facts, ¶¶ 50-58), they are forced to rely on Mr. Snyder's narrow view that, after the human acts take place, the process is automated because the EZ-Texting system uses an SMS aggregator on the back end to automatically send messages. *See* Snyder Report, ¶ 54. However, Mr. Snyder's interpretation would be akin to arguing that the sender of a group text message from an ordinary iPhone is operating an ATDS in violation of the TCPA by ignoring all the human interaction necessary to cause the group message to be sent (selecting recipients, composing the message, pressing send), and arguing that from the point the sender presses the "send" button, the message is automatically sent to all recipients. Therefore, Mr. Snyder's opinions would sweep into the TCPA's reach of activity that occurs millions of times per day using a regular cell phone. This is precisely what *ACA* sought to prevent. *ACA*, at *7.

In sum, the undisputed facts and governing law are directly contrary to Plaintiff's entire theory of this case – that an ATDS was used. Hopele's conduct falls squarely in line with the human intervention analysis required to extract Hopele's conduct from the realm of TCPA liability. Because Plaintiff cannot (and does not) refute Hopele's and CallFire/EZ-Texting's testimony regarding the multi-step process of human intervention described above, the Motion should be denied and summary judgment should be entered in favor of Hopele on all counts.

III.   **Plaintiff Wholly Fails To Meet Her Burden On Summary Judgment On Count II, Which Claims a Willful and Knowing Violation of the TCPA**

Count II seeks treble damages based on an assertion that Hopele "willfully or knowingly" violated the TCPA. 47 U.S.C. § 227(b)(3). Plaintiff's Motion altogether fails to address Count II. Moreover, the only record facts on this point show that Hopele was not even aware of the TCPA or its restrictions on texting prior to this lawsuit being filed. Counter-Facts, ¶¶ 96-97. Therefore, to the extent Plaintiff's Motion can be read as requesting summary judgment on Count II, the Motion should be denied. *Strauss v. CBE Group, Inc.*, 173 F. Supp. 3d 1302, 1311 (S.D. Fla. 2016) (Cohn, J.) (where "[p]laintiff has provided no evidence to put [defendant's] knowledge and intent at issue . . . [there is] an absence of evidence to support [p]laintiff's claim" and the defendant "is entitled to summary judgment" on the claim that its purported TCPA violation was "willful and knowing"). Because Plaintiff has wholly failed to proffer even a shred of evidence to support Count II, the Motion should be denied as to that claim (and Hopele's parallel request for summary judgment granted), as there are no facts for the jury to consider.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, Hopele respectfully requests that the Court enter an order denying Plaintiff's Motion and granting Hopele such other and further relief as the Court deems just and proper (including granting Hopele's motion for summary judgment (ECF No. 62).

20

44839720;2

Dated: April 6, 2018.                    **AKERMAN LLP**
                                         Three Brickell City Centre, Suite 1100
                                         98 Southeast Seventh Street
                                         Miami, Florida 33131
                                         Tel: (305) 374-5600
                                         Fax: (305) 374-5095

                                         */s/ Jeffrey B. Pertnoy*
                                         Jeffrey B. Pertnoy (FBN 91939)
                                         jeffrey.pertnoy@akerman.com
                                         Lawrence D. Silverman (FBN 7160)
                                         lawrence.silverman@akerman.com
                                         Stacy J. Rodriguez (FBN 44109)
                                         stacy.rodriguez@akerman.com
                                         *Counsel for Defendant Hopele*

21

44839720;2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Scott A. Edelsberg, Esq.
Jeff Ostrow, Esq.
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: 954-525-4100
Fax: 954-525-4300
kaufman@kolawyers.com
edelsberg@kolawyers.com
ostrow@kolawyers.com
*Counsel for Plaintiff*

Manuel S. Hiraldo, Esq.
**HIRALDO P.A.**
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, Florida 33301
Tel: 954-400-4713
mhiraldo@hiraldolaw.com
*Counsel for Plaintiff*

Andrew J. Shamis, Esq.
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Tel: 305-479-2299
ashamis@shamisgentile.com
*Counsel for Plaintiff*

Ian C. Ballon, Esq.
Ian M. Ross, Esq.
Nina D. Boyajian, Esq.
Hilarie Bass, Esq.
**GREENBERG TRAURIG, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Tel: (305) 579-0500
Fax: (305) 579-0717
bassh@gtlaw.com
boyajiann@gtlaw.com
rossi@gtlaw.com
ballon@gtlaw.com
*Counsel for Defendant Pandora Jewelry, LLC*

/s/ *Jeffrey B. Pertnoy*
Jeffrey B. Pertnoy, Esq.

22

44839720;2