UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:17-CV-62100-MORENO/SELTZER

KATIRIA RAMOS,
Individually and on behalf of all
others similarly situated,

       Plaintiff,

v.

HOPELE OF FORT LAUDERDALE, LLC
d/b/a PANDORA @ GALLERIA,
a Florida limited liability company, and
PANDORA JEWELRY, LLC, a Maryland
limited liability company,

       Defendants.

_____/

## DEFENDANT PANDORA JEWELRY, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

Pandora Jewelry LLC's ("Pandora") Motion for Summary Judgment (ECF No. 19) (the "Motion") demonstrated that there is no genuine issue of material fact to support plaintiff Ramos's claim that Pandora is directly or vicariously liable for the text messages she purportedly received. Plaintiff's Response in Opposition to Pandora's Motion (ECF No. 64) (the "Opposition") fails to rebut that showing. Instead, Ramos tries to conflate two separate issues: (1) whether Pandora in 2017 learned that Hopele used a third party to send text messages to its customers (which generally carries no legal consequences), and (2) whether Pandora authorized or knew that those text messages were sent *in violation of the TCPA*. There are no facts showing that Pandora authorized Hopele to send text messages, and no facts showing that Pandora knew that the third party Hopele hired to send text messages was sending them in violation of the TCPA (which Hopele denies). Accordingly, the record does not raise a genuine issue of material fact that would prevent this Court from entering summary judgment on Pandora's behalf.

As an initial matter, Pandora is not directly liable because it did not send the alleged text messages at the heart of Ramos's claims. Ramos does not dispute this fact, so instead argues for vicarious liability under common law theories of (1) actual agency, (2) apparent agency, and (3) ratification. She fails, however, to demonstrate that any material facts are in dispute on these theories. First, Ramos does set forth any facts showing that Hopele acted with Pandora's actual authority. Setting aside the fact that Hopele has already testified that it did not have Pandora's authority to send the text messages, the undisputed facts show that Pandora did not control Hopele's day-to-day operations, and had no control over the third-party vendors Hopele hired. Moreover, federal common law makes clear that actual authority cannot exist where the purported agent acts outside the scope of the purported principal's authority, as Hopele did here. Second, Ramos fails to raise an issue of material fact supporting her apparent agency theory because the undisputed facts show that she did not, and could not, reasonably believe that Pandora authorized Hopele to send her a text message on its behalf. Finally, Ramos's ratification theory fails to raise an issue of material fact because federal courts have repeatedly held that ratification requires a principal-agent relationship and, regardless, it is black-letter law that a party cannot ratify another's actions unless it had complete knowledge of all material facts surrounding those actions. It is undisputed that Pandora had no knowledge that Hopele's marketing efforts were illegal (indeed, they were not). For all these reasons, summary judgement

should be granted in Pandora's favor.

## II.   PANDORA IS NOT DIRECTLY LIABLE BECAUSE IT DID NOT SEND THE ALLEGED TEXT MESSAGES

Ramos's Complaint concedes that Pandora did not send the alleged text messages, but that CallFire Inc. (or its affiliate, EZ Texting) is "the company responsible for transmitting the violative text messages to Plaintiff and the members of the class." (SOF ¶ 15.) Although these admissions are dispositive, the record evidence also confirms these allegations. (SOF ¶¶ 14–18.) And because Ramos does not dispute any of these facts or arguments in her Opposition, there is no genuine issue of material fact to resolve on this topic.

## III.   PANDORA IS NOT VICARIOUSLY LIABLE FOR THE ALLEGED TEXT MESSAGES

### A.   Ramos's Opposition fails to set forth any material facts demonstrating Hopele acted with Pandora's actual authority

Ramos presents a laundry list of items from Pandora's Franchise Agreement and Operations Manual to suggest that Pandora had sufficient "control" over Hopele's operations as to create an agency relationship. As well settled authority makes clear, however, the Franchise Agreement and Operations Manual do not create an agency relationship; they merely reflect Pandora's efforts to protect its brand. This is confirmed by the Restatement: "Many common legal relationships do not by themselves create relationships of agency . . . . These include relationships between . . . franchisors and franchisees . . . ." RESTATEMENT (THIRD) OF AGENCY ("RESTATEMENT") § 1.02 (emphasis added). Indeed, had Pandora failed to exercise control over these characteristics (such as the volume of music played in the stores), it would risk forfeiting its trademark rights by engaging in "naked licensing" and failing to exercise adequate quality control over the use of its mark, such that the trademark no longer represents the quality of Pandora products and services that consumers have come to expect. ███████████ ████████████████████████████████████████████████████████ ████████████████████████████ (ECF No 21-1; Hopele Dep. at 143:24–145:3), and the Opposition presents no evidence that undermines the Franchise Agreement's express language that Hopele is not Pandora's agent.

"To establish an actual agency relationship, the following elements must be established: (1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Lobegeiger v.*

*Celebrity Cruises, Inc.*, 869 F. Supp. 2d 1350, 1356 (S.D. Fla. 2012) (citations omitted). Courts routinely find that franchise relationships do not rise to that level.[1] To hold otherwise would lead to an explosion of franchisor liability for everything from slip-and-fall injuries to sexual harassment to unpaid electric bills. That is not what Congress intended in enacting the TCPA.

In her Opposition, Ramos ignores this wealth of case law, ignores the undisputed facts showing that Hopele *admitted* that its sending of text messages was unauthorized, and focuses solely on the control element. In doing so, she overlooks the Franchise Agreement's clear delineation of Hopele and Pandora's relationship. The agreement specifies that Hopele "is an independent business and responsible for *control and management*" of its store (Franchise Agreement at 10 (emphasis added)), and that they are "independent contractors. Neither is the agent . . . of the other." (*Id.* at 23.) Although not dispositive of whether Pandora and Hopele were in a principal-agent relationship, the agreement is powerful "evidence of the parties' intent." *See Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1244 (S.D. Fla. 2013); *Estate of Miller v. Thrify Rent-A-Car Sys., Inc.*, 637 F. Supp. 2d 1029, 1042 (M.D. Fla. 2009) (rejecting plaintiff's agency argument where "nothing in the agreement goes beyond a typical franchise relationship and into the realm of 'directing or managing' [the franchisee's] business").

Moreover, the Opposition focuses on Pandora's control over certain items that, contrary to Ramos's position, "are typical of franchise agreements to establish uniformity and reasonably protect [Pandora's] business interests." *See Cain v. Shell Oil Co.*, 994 F. Supp. 2d 1251, 1254 (N.D. Fla. 2014) (granting franchisor's motion for summary judgment where there was no agency relationship between franchisor and franchisee); *Estate of Miller*, 637 F. Supp. 2d at 1042 (franchisee agreement requiring franchisee to use franchisor's reservation system, meet performance benchmark, and promote its business were simply "to ensure consistency throughout the franchise network"). For example, Ramos highlights some common features of *any* franchise agreement—e.g., that Hopele is prohibited from selling non-Pandora jewelry and is

---

[1]     *See, e.g., McKinnon v. YUM! Brands, Inc.*, No. 1:15-CV-00286-BLW, 2017 WL 3659166, at *8 (D. Idaho Aug. 24, 2017) (defendants' entitled to summary judgment on vicarious liability issue where they did not have control over the day-to-day operations of franchisee); *Allen v. Greenville Hotel Partners, Inc.*, 409 F. Supp. 2d 672, 680 (D.S.C. 2006) (granting franchisor's motion for summary judgment where franchisor did not exercise sufficient control over franchisee to be held vicariously liable); *Brooks v. Collis Foods, Inc.*, 365 F. Supp. 2d 1342, 1350 (N.D. Ga. 2005) (citations omitted) (plaintiffs failed to create genuine issue of material fact regarding actual agency where there was no evidence that franchisor exerted control over the day-to-day operations of the franchisee).

generally required to stay on-brand. In doing so, she ignores the day-to-day operations that remain in Hopele's exclusive control. Indeed, the Franchise Agreement specifies that Hopele is in charge of the day-to-day management of its business, including "hiring and discharging" employees and "paying wages and benefits." (Franchise Agreement at 10.) *See Mann v. Prudential Real Estate Affiliates, Inc.*, No. 90 C 5518, 1990 WL 205286, at \*5 (N.D. Ill. Dec. 10, 1990) (franchisor did not have actual authority over franchisee where franchisee was in charge of hiring and firing its employees). And while Pandora requires Hopele to conduct local marketing efforts, especially with respect to third party vendors, Hopele decides *how* to do so. (*See* Operations Agreement at 11 ███████████████████████████████████████ █████████████████████████████████████████████████████████████ Thus, Hopele retains primary control over the means of its day-to-day operations, and is simply required to sell Pandora's products and brand. *See Estate of Miller*, 637 F. Supp. 2d at 1041 (rejecting agency argument and granting summary judgment for franchisor where "[t]he agreement does not instruct [franchisee for car rental company] on what cars to buy, nor does it allow [franchisor] to dictate [franchisee's] hiring practices"). Therefore, the Court should find that there is no actual agency relationship between them.

Even if Pandora exercised sufficient control over Hopele to create an agency relationship, that only begs the question, but does not answer it because the text messages must have been within Hopele's purported scope of authority.[2] As the Restatement makes clear, an agent acts with authority when "at the time of taking action . . . the agent reasonably believes, in accordance with the principal's manifestations to the agent, that that the principal wishes the agent so to act." RESTATEMENT § 2.01. Here, Ramos sidesteps the fact that actual agency could exist only where the Hopele *reasonably believed* it had actual authority for its actions, when in fact, Hopele expressly testified that it knew it did *not* have authority for its actions. *See 1-800*

---

[2]     *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251-52 (10th Cir. 2013) (affirming summary judgment in defendant's favor on vicarious liability where purported agent lacked authority for conduct in question); *see also Ramos-Barrientos v. Bland*, 661 F.3d 587, 602 (11th Cir. 2011) (affirming summary judgment on vicarious liability where purported agents acted outside scope of authority); *Joe N. Pratt Ins. v. Doane*, No. CIV. V-07-07, 2009 WL 3157335, at \*4 (S.D. Tex. Sept. 25, 2009) (granting summary judgment in favor of defendants on vicarious liability claims where plaintiff "ha[d] not offered any evidence to show that any alleged wrongful acts taken by the [defendants] were within the scope of authority granted by the agent"); *Smith-Perry Elec. Co. v. Transp. Clearings of Los Angeles*, 243 F.2d 819, 821 (5th Cir. 1957) ("One of the horn-book principles of agency is that a principal is bound by the acts of his agent acting within the scope of his authority.").

*Contacts, Inc.*, 722 F.3d at 1251–52 (affirming summary judgment for defendant in part where agent knew its acts were not authorized and thus "the subjective component of actual authority was absent") ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (ECF No. 21-1 at 2; Hopele Dep. at 125:2–6.)

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (*Id.* at 140:16–141:5; 142:17–24.)

Separate from the undisputed testimony that Hopele knew it did not have authority to send text messages, there also is no evidence that Pandora ever manifested assent to Hopele's text messages. For example, Pandora's Operation Manual, upon which the Opposition heavily relies, does not authorize text message marketing at all. Furthermore, the Franchise Agreement requires Hopele to obtain Pandora's approval for all marketing efforts. (Franchise Agreement at ¶ 8.C. ("[Hopele] must use only such marketing materials as we [i.e., Pandora] furnish, approve or make available . . . .").)▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆ (Pentecost Dep. 124:12–16, 124:20–125:6, 141:2–20.)▆

▆▆▆▆▆▆▆▆▆▆▆

▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆ ▆▆▆

(Pentecost Deposition at 125:2–6.) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

(*Compare* Pentecost Depo. 143:24–144:3, *with* McDonald Decl. ¶ 15.)▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆ (McDonald Depo. at 38:11–21.) Based on these unrebutted facts, even if Ramos were able to establish the existence of an agency relationship – which she has not, as explained in the preceding Section – Pandora cannot be held vicariously liable because Hopele was acting outside its purported authority. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938 (7th Cir. 2016) (affirming district court ruling that defendant was not vicariously liable for faxes sent outside of 20-mile radius because the purported agent had "expressly contradicted [the purported principal's] actual instructions").

**B.    Ramos's Opposition fails to set forth any material facts demonstrating that Hopele acted with Pandora's apparent authority**

Pandora's Motion established that as a matter of law it cannot be liable on a theory of apparent agency, and Ramos's Opposition fails to set forth any material facts undermining that argument.

Apparent authority requires three elements: (1) the purported principal must make a representation to the plaintiff regarding the agent, (2) the plaintiff must reasonably believe, based on that representation, that the agent is authorized to act for the principal, and (3) the plaintiff must detrimentally rely on the appearance of that agency. *Termilus v. Marksman Sec. Corp.*, No. 15-61758-CIV-MORENO, 2016 WL 6237264, at *2-3 (S.D. Fla. Sept. 1, 2016) (Moreno, J.) (granting summary judgment for defendant on apparent authority). As this Court has held, there is both an "objective" component—an action by the principal making it appear as if there is agency—and a "subjective" component—a reasonable belief by the plaintiff that there is agency. *Id.* at *3 (finding no apparent authority where "there was no record evidence establishing the objective component—a representation by Defendant to Plaintiff that [alleged agent] was [defendant's agent]"). Ramos fails to set forth an issue of material fact with respect to either component.

First, there are no issues of fact showing that Pandora made any statements *to Ramos* that would make it appear as if Hopele had authority to send text messages on Pandora's behalf. *See Bridgeview*, 816 F.3d at 939 (rejecting an apparent authority argument where the purported principal "did nothing to create an appearance that [the purported agent] had authority to send faxes on [its] behalf . . ."); *Toney v. Quality Resources, Inc.*, 75 F. Supp. 3d 727, 744 (N.D. Ill. 2014) (finding no apparent authority where plaintiff could not "trace any belief she may have had about the relationship between [agent] and [principal] to a manifestation of [the principal]").

Second, there are no issues of fact showing that Ramos believed that Hopele was acting on Pandora's behalf, let alone that such a belief was reasonable. To the contrary, Ramos's own testimony demonstrated that (1) she believed she was harmed by Hopele, not by Pandora (Ramos Dep. at 46:23–25); (2) she knew she received the text from Hopele, not Pandora (*id.* at 91:23–92:1), and (3) she understands that "Pandora and Pandora Galleria are not the same entity" (*id.* at 106:2–6). Ramos's testimony implicitly concedes what is obvious to the general public:  that a franchisee does not act for its franchisor. *See Estate of Miller*, 637 F. Supp. 2d at 1040 ("[C]ourts are directed to presume that members of the public know that an ordinary franchise relationship

is not a representation of agency.") (citation omitted).[3] Thus, there is no issue of material fact on apparent authority.

**C.      Ramos's Opposition fails to set forth any material facts demonstrating that Pandora ratified Hopele's sending of any purported text messages to Ramos**

The Opposition confirms that there is no genuine issue of material fact suggesting that Pandora ratified the sending of the purported text messages. Even though Ramos lists at least four critical requirements for ratification under the TCPA, she presents no evidence suggesting that there are material facts supporting *any* of them. Specifically, Ramos lists the following *necessary* elements: [**1**] "It is necessary that the actor have acted or purported to act on behalf of the ratifier." (Opp. at 17 (quoting RESTATEMENT § 4.01 cmt. b).) In addition, "the principal of the employee [**2**] must 'have full knowledge of all the facts,' [**3**] there must be 'an intention on the part of the purported principal to ratify the act in question,' and [**4**] 'the required intention must be manifested in some way.'" (*Id.* (quoting *Haq v. United Airlines*, 9 Fla. L. Weekly Fed. D 774 (U.S. S.D. Fla. 1996).) The Opposition does not satisfy *any* of these elements, so there are four, independent grounds on which the Court should dispose of the vicarious liability theory.

*First*, as the Restatement makes clear: "When an actor [1] is not an agent and [2] does not purport to be one, the agency-law doctrine of ratification is not a basis on which another person may become subject to the legal consequences of the actor's conduct." RESTATEMENT § 4.03. As federal courts throughout the country have explained, "[a]lthough a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 680 (9th Cir. 2014).[4] Ramos has not met the first element of an actual or apparent agency

---

[3]      Ramos argues that certain facts "may demonstrate that the *telemarketer* is the seller's authorized representative with apparent authority to make the *seller* vicariously liable for the telemarketer's" activities. (Opp. at 15–16 (emphasis).) But here, Pandora is not the "seller," and Hopele is not the "telemarketer" – those roles are filled by Hopele and EZ Texting, respectively. In other words, Pandora is a further step removed from the scenarios presented by Ramos's cited authorities, so while they *might* support vicarious liability against Hopele based on conduct by EZ Texting, they offer no support for any liability against Pandora.

[4]      *See also Perry v. Scruggs*, 17 F. App'x 81, 91 n.1 (4th Cir. 2001) (affirming summary judgment for defendant, explaining that because "there was no evidence that [purported agents] acted on behalf of the [defendant], we find that the doctrine of ratification does not apply"); *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1012 (9th Cir. 2018) ("Because AC Referral (which is not a party to this suit) was neither the agent nor purported agent of four of the defendants, they cannot have ratified AC Referral's acts."); *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.* ("*Monitronics Int'l*"), 223 F. Supp. 3d 514, 525-26 (N.D.W. Va. 2016) (granting summary judgment for TCPA defendant where "Plaintiffs ha[d] not presented evidence

relationship. (*See* Sections III.A. & B., *supra*.)

*Second*, although Ramos concedes that Pandora must have had "*full* knowledge of *all* the facts" in order to incur liability through ratification, she has not met that element because, in the context of the TCPA, this requires the principal to have known that the agent's actions were, in fact, *illegal*. The decision in *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1012 (9th Cir. 2018), which Ramos cites, illustrates the point. In that case, the plaintiff filed a TCPA claim against several parties, including a marketing company (the purported principal) and its lead generator (the purported agent). *See id.* at 1012–13. In affirming summary judgment for the marketing company, the court's analysis was straightforward, even though (unlike our case) the agency relationship was *not even disputed*: "Although [the lead generator] was an agent of [the marketing company], Kristensen presented no evidence that [the marketing company] had actual knowledge that [the lead generator] was sending text messages *in violation of [the] TCPA*." *Id.* at 1015 (emphasis added). Nothing more was required to dispose of the claim.

Here, there are no facts suggesting that Pandora knew that Hopele's marketing violated the TCPA (and indeed, it did not). ███████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████ (Shroyer Depo. at 33:12–17; *see also*

McDonald Depo. 116:19–21.) ███████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

(Ramos Composite Ex. D, No. 28.) But, when the entire conversation is read in its entirety, and one reads Mr. Shroyer's explanation of the brief text message,[5] the only *reasonable* conclusion that a jury could draw from this email is that Pandora sought to comply with the law across the

---

that would support that an applicable principal-agent relationship existed . . . . Without this prerequisite, [defendant] could not 'ratify' the actions of its resellers or authorized dealers"); *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016) ("*As several courts have explained*, although a principal is liable when it ratifies an originally unauthorized tort, such as a TCPA violation, the principal-agent relationship is still a requisite, and ratification can have no meaning without it.") (emphasis added) (citations, alterations, and internal quotation marks omitted).

[5] ████████████████████████████████████████████████████████████████

███████████████████████████████████████ (Shroyer Depo. 79:17–80:11.) Ramos has presented no evidence to rebut that testimony.

board, not break it. Ramos's suggestion to the contrary is unsupported, and she "is not permitted to make [her] case by taking terms out of context and ignoring the plain meaning of the immediate context" because "a reasonable reader does not read terms in isolation, but puts them in the context in which they were published."[6]

*Third*, Ramos has presented no evidence that anyone with authorization power at Pandora subjectively intended to ratify Hopele's marketing text messages *with knowledge that they violated the TCPA*. And, *fourth*, Ramos has not presented any evidence that Pandora somehow manifested such an intention to Hopele, EZ Texting, Ramos, or anyone else. For any or all of these four separate grounds, Ramos has not raised a material fact showing that Pandora ratified Hopele's sending of text messages and, accordingly, Pandora is entitled to summary judgment. *See Kristensen*, 879 F.3d at 1014 (rejecting ratification theory where defendant did not have knowledge of material facts).

## IV.   THE OPPOSITION'S ATTACKS ON THE MCDONALD DECLARATION SHOULD BE REJECTED

Ramos's last-ditch effort to avoid summary judgment argues that the Declaration of Laurie McDonald which Pandora filed in support of its Motion is "legally insufficient." (Opp. 6–8.) This is little more than a distraction. First, the Opposition argues that the Declaration is insufficient because it does not recite verbatim recitation the language in 28 U.S.C. § 1746(2). (Opp. 7.) But the statute only requires language that was "(1) subscribed by [the declarant], (2) as true under penalty of perjury, and (3) dated, in substantially the following form . . . ." 28 U.S.C. § 1746(2). Here, the Declaration satisfies *all* of these requirements (*see* ECF No. 21-1); Ramos's argument that there must be a verbatim recitation of the statute is plainly wrong. *See Dean v. United States*, 330 F. Supp. 2d 1318, 1328 (N.D. Fla. 2004) ("[A] declaration that [does] not track the language of 2[8] U.S.C. § 1746 [sic] i[s] nevertheless adequately where it contain[s] the *critical elements* of (1) an acknowledgement of the penalties of perjury and (2) a statement that the information in the declaration i[s] true.") (citing *United States v. McNeal*, 82 F. Supp. 2d 945, 950 (S.D. Ind. 2000)) (emphasis in original).

---

[6]     *See Ranbaxy Labs. Inc. v. First Databank, Inc*., 826 F.3d 1334, 1337, 1341 (11th Cir. 2016) (affirming summary judgment where "no reasonable reader" would interpret the disputed statement in the manner proposed by opposing party); *see also Bishop v. I.C. System, Inc.*, 713 F. Supp. 2d 1361, 1367 (M.D. Fla. 2010) (granting summary judgment for defendant and holding that a "disagreement must be reasonable," and is "not 'genuine' if it rests merely on a 'metaphysical doubt' about the meaning of a word") (footnotes omitted).

Second, the Opposition argues that the Declaration, in certain parts, does not appear to be based on personal knowledge or relies on hearsay.  This blind speculation is disingenuous at best and not sufficient to raise a material factual dispute. ███████████████████████

███████████████████████████████████████

███████████  (Hopele Dep. at 143:24–145:3.) In█████████████████

███████████████████████████████████████

██  (McDonald Dep. 120:5–12.) Ramos did not challenge her personal knowledge or the evidentiary basis or foundation for any of the statements in the Declaration. Likewise, the Opposition does not present any basis for this Court to doubt that Ms. McDonald, as general manager for Pandora U.S., had personal knowledge based on her normal business duties of the matters in her Declaration. *See Reyes v. AT&T Mobility Servs. LLC*, 759 F. Supp. 2d 1328, 1334 (denying motion to strike affidavits because "it is reasonable to assume at this stage that the affiants would have learned what other Retail Account Executives did during the normal course of their employment, such as during discussions with other employees, visiting other stores, reviewing emails from co-workers or review material distributed by [the company]"); *Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477, at *4 (E.D. Cal. Oct. 3, 2005) (holding that an employee had personal knowledge for affidavit where a "reasonable inference" was that he, "as an employee of defendant, would learn, during the normal course of his employment . . . what other similar employees are doing, and where they are doing [their] jobs"). Ramos's unsubstantiated credibility attacks and accusations of underlying impermissible hearsay are improper at this stage, and should be rejected.[7] *See Reyes*, 759 F. Supp. 2d at 1334 (noting that "Rule 56's standard is only a minimum threshold that, once satisfied, precludes a district court from 'weighing conflicting evidence or making credibility determinations'") (quoting *Hairston v. Gainesville Sun Pub Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).

**V.    CONCLUSION**

For the foregoing reasons, Pandora respectfully requests that this Court enter an Order granting summary judgment on its behalf on Counts I and II of the Class Action Complaint.

---

[7]     In the cases Ramos cites, the declarant expressly qualified material portions of its declaration, and thus are inapposite here.  *See Harrison v. Culliver*, 746 F.3d 1288, 1299 n.16 (11th Cir. 2014) (involving a declarant who expressly qualified his statements regarding the number of relevant assaults in certain years); *Rosen v. Serv. Corp. Int'l*, No. 11-62547-CIV, 2012 WL 370298, at *1 (S.D. Fla. Feb. 3, 2012) (qualifying several key paragraphs of declaration with phrases such as "it is my understanding that" and "my understanding is that").

CASE NO.: 1:17-CV-62100-MORENO/SELTZER

Dated: April 6, 2018                                 Respectfully submitted,

                                                    **GREENBERG TRAURIG, P.A.**
                                                    333 SE 2nd Avenue
                                                    Miami, FL  33131
                                                    Telephone:  (305) 579-0500
                                                    Facsimile:   (305) 579-0717

                                                    By:      */s/ Ian M. Ross*
                                                             HILARIE BASS
                                                             Florida Bar No.  334323
                                                             bassh@gtlaw.com
                                                             IAN M. ROSS
                                                             Florida Bar No.  091214
                                                             rossi@gtlaw.com
                                                             FLService@gtlaw.com
                                                             MontelH@gtlaw.com


                                                    **GREENBERG TRAURIG, LLP**
                                                    1840 Century Park East
                                                    Suite 1900
                                                    Los Angeles, CA  90067
                                                    Telephone:  (310) 586-7700
                                                    Facsimile:   (310) 586-7800
                                                    IAN C. BALLON
                                                    *Admitted pro hac vice*
                                                    ballon@gtlaw.com
                                                    NINA D. BOYAJIAN
                                                    *Admitted pro hac vice*
                                                    boyajiann@gtlaw.com

                                                    *Attorneys for Defendant,*
                                                    *Pandora Jewelry, LLC*

CASE NO.: 1:17-CV-62100-MORENO/SELTZER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of April, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


/s/ Ian M. Ross
IAN M. ROSS

## SERVICE LIST

**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
Scott A. Edelsberg
Jeff Ostrow, Esq.
Avi R. Kaufman, Esq.
1 W. Las Olas Boulevard, Suite 500
Fort Lauderdale, FL  33301
Telephone:  954-525-4100
edelsberg@kolawyers.com
ostrow@kolawyers.com
kaufman@kolawyers.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
14 NE 1st Avenue, Suite 400
Miami, FL  33132
Telephone:  305-479-2299
ashamis@shamisgentile.com

**HIRALDO P.A.**
Manuel S. Hiraldo
401 E Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL  33301
Telephone:  954-400-4713
mhiraldo@hiraldolaw.com

*Counsel for Plaintiff Katiria Ramos*

**AKERMAN LLP**
Jeffrey Benjamin Pertnoy
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Telephone: (305) 374-5600
jeffrey.pertnoy@akerman.com

**AKERMAN LLP**
Stacy Jaye Rodriguez
Suntrust International Center
1 SE 3rd Avenue
25th Floor
Miami, FL 33131-1714
Telephone: 954-468-2454
Email: stacy.rodriguez@akerman.com

*Counsel for Hopele of Fort Lauderdale, LLC*

12